**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 15-165 (19) (JRT/LIB) |
| Plaintiff, | |
| v. | **ORDER ON REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| YALONZO RAMON HULL, | |
| Defendant. | |

Deidre Y. Aanstad and Melinda A. Williams, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Paul C. Engh, **PAUL ENGH LAW OFFICE**, 200 South Sixth Street, Suite 1225, Minneapolis, MN 55402, for defendant.

Defendant Yalonzo Ramon Hull faces drug charges following an arrest at a cabin at Spirit Lake Casino in November 2014. Hull moved the Court to suppress evidence obtained pursuant to his arrest because, in his view, law enforcement arrested him without probable cause. United States Magistrate Judge Leo I. Brisbois held an evidentiary hearing on the matter and issued a Report and Recommendation ("R&R") recommending that the Court deny the motion. Hull now objects to the R&R. Because Hull has not met his burden of showing that his Fourth Amendment rights were violated, the Court will overrule his objections, adopt the R&R, and deny the motion to suppress.

## BACKGROUND

The Magistrate Judge held an evidentiary hearing on Hull's motion to suppress on October 20, 2015. At the hearing, the United States offered the testimony of two law enforcement officers, one of whom was Special Agent Travis Zahn from the North Dakota Bureau of Criminal Investigation. The following facts are based on the testimony given at that hearing as well as undisputed portions of the R&R's summary of the facts.

On November 5, 2014, Zahn received a call from Chief Raymond Cavanaugh of the Spirit Lake Tribal Police Department, informing Zahn that Chief Cavanaugh was looking for a female suspect staying at the Spirit Lake Casino with a group of eight black men. Chief Cavanaugh said he had received information that the group may have been selling illegal drugs from the casino.

Zahn traveled to the casino to investigate Chief Cavanaugh's tip. After arriving, Zahn observed four black men walking through the casino and watched a casino security video of a black man later identified as co-defendant Calvin Beasley exiting a particular casino cabin, entering the back seat of a sports-utility vehicle, exchanging money and a small plastic bag with a passenger named William Cavanaugh, and then exiting the vehicle and returning to the cabin. Zahn knew who William Cavanaugh was, and knew him to be involved in the drug trade. Based on those facts, Zahn gave an oral probable cause affidavit and received a search warrant to search the cabin; the warrant did not name Hull or contain facts or a description particular to Hull.

Then Zahn and other law enforcement officers executed the search warrant. According to Zahn's testimony at the evidentiary hearing, Zahn and thirteen officers

entered the cabin and encountered five individuals, one of whom would later be identified as Hull. The five individuals "were secured, searched, and sat on the couch or kitchen table," and were "handcuffed." Zahn asked all five why they were there, and Hull replied that "he was on vacation" and "was a family friend hanging with friends." During the search of the cabin, one officer noticed one of the five individuals, Steve Fagan, staring at a vent. The officers looked in the vent and found 460 pills packaged in distribution-like packaging. The officers also found forty to fifty pills in other areas of the cabin. However, none of the pills were found in Hull's possession or were tied specifically to Hull. Also, at some point during the search and seizure – Zahn did not specify in his testimony whether this occurred before or after the initial seizure – officers found notes in Hull's bag, or luggage, and officers initially thought those notes were related to drug transactions. (Zahn did not testify at the hearing as to whether Hull's bag was searched incident to the search-related seizure, or pursuant to the warrant.) Zahn testified that Hull was arrested "because the totality of the circumstances type of thing," but Zahn did not specify in his testimony exactly when in the course of the search Hull was arrested: in the initial detention, or after the search of the cabin was complete.

After the hearing, the Magistrate Judge issued his R&R, and recommended that the Court deny in part Hull's motion to suppress because Hull's seizure and arrest were reasonable.[1] Hull's arrest was proper, according to the Magistrate Judge, because Hull

---

[1] Hull's motion to suppress also requests that the Court suppress evidence stemming from a separate May 2014 traffic stop. The Magistrate Judge recommended that the Court grant the motion with respect to the traffic stop evidence because the stop was not supported by reasonable

(Footnote continued on next page.)

was present in the cabin and the officers made a "reasonable inference that all of the people staying in [the cabin] were aware of the presence of illegal drugs being sold by a member of the group." (R&R at 11, Dec. 3, 2015, Docket No. 1,052.)  The Magistrate Judge also relied on the note found in Hull's bag.  (*Id.*)

Hull timely filed objections to the R&R and provided a specific narrative of the events on the day of his arrest.  According to Hull, after the officers entered the house he was "immediately cuffed and then taken to jail without a discernment of what he or she had done against the law," and he and the other individuals in the cabin "were not temporarily detained merely for reasons of officer safety."  (Def.'s Objs. to the R&R ("Objs.") at 2, Dec. 16, 2015, Docket No. 1,100; *see also* Def.'s Mem. in Supp. of Mot. to Suppress at 2, Oct. 26, 2015, Docket No. 927.)  Hull also states he was arrested prior to the officers' search of his bag (Objs. at 4), and that the notes found in the bag, which officers initially thought were drug-related, later turned out to be "not connected to anything of substance in this case" (*id.* at 2).

## ANALYSIS

### I.   STANDARD OF REVIEW

For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation.  The district judge may accept, reject, or modify the recommendation, receive further

---

(Footnote continued.)

suspicion.  (R&R at 13-14.)  The United States did not object to the Magistrate Judge's findings.  The Court will therefore grant Hull's motion in part with respect to the traffic stop.

evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1).

## II.   SUPPRESSION MOTION

Although the Fourth Amendment contains no provisions precluding the use of evidence obtained in violation of its command, the Supreme Court's decisions "establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).  The proponent of a motion to suppress evidence on the basis of a Fourth Amendment violation "has the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## II.   HULL'S OBJECTIONS

Hull objects to the Magistrate Judge's finding that the officers had probable cause to arrest him.  Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "'[T]he general rule [is] that Fourth Amendment seizures are "reasonable" only if based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).  Thus, in order for a government officer to arrest a person, the officer must generally act with probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).

When the Court determines after the fact whether an officer had probable cause to arrest an individual, the Court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

But in certain circumstances, an officer's seizure of a person can be "reasonable" even when probable cause is lacking. As relevant to this case, for example, an officer executing a search warrant is permitted to seize, or "detain[,] the occupants of the premises while a proper search is conducted." *Bailey*, 133 S. Ct. at 1037 (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). In those circumstances, the officer does not need any "particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Id.* at 1037-38.

Here, Hull's argument hinges on when the officers arrested him. According to the R&R's statement of the facts, with which the United States agrees, the officers first detained Hull while executing the search of the cabin, and only after the search, and the discovery of the pills and the notes in Hull's bag, was Hull finally arrested. If this narrative is correct, then Hull's initial detention required no probable cause because it was pursuant to *Bailey*'s rule that officers may detain a person during a valid search, and then the officers developed probable cause throughout the course of Hull's permissible

detention by finding the drugs and the drug notes in Hull's bag.² It was only then, after the search and these discoveries that an arrest was made – and that arrest would be valid.

According to Hull, however, the R&R's narrative is wrong. In Hull's version of events, the officers never "detained" him during the search; the officers just arrested him. According to Hull, the officers made their arrest right away – and it was not until after Hull's arrest that the drugs were found and the officers discovered the notes in his bag. Under Hull's version of events, therefore, the main facts relied upon by the United States to support their argument that the officers had probable cause – the note and the vacation statement – were unknown by the officers at the time of the arrest.

Yet the evidence before the Court does not make clear whether officers discovered the note or elicited the statement before or after the arrest. Zahn testified that Hull **was** arrested, but not **when** he was arrested. Zahn indicated that officers "secured," "searched," and "handcuffed" Hull when officers searched the home, but did not state whether those actions constituted an arrest or a detention pursuant to the search. And while Zahn testified that officers discovered notes in Hull's bag, Zahn never stated when the notes were discovered in relation to Hull's seizure.³

---

² The officers' search of Hull's bag was permissible both because the warrant authorized it, *United States v. Ross*, 456 U.S. 798, 820-21 (1982), and because, assuming the bag was within Hull's reach, officers were permitted to search the bag to ensure their own safety, *Los Angeles Cty. v. Rettele*, 550 U.S. 609, 614-15 (2007).

³ Hull also told officers he was visiting Spirit Lake on vacation (in North Dakota, in November), and Zahn suggested that this statement bolstered the officers' probable cause determination. The Court, however, is not prepared to find this statement a valid basis for probable cause. Casinos are a destination for many innocent vacationers, even in the winter.

Hull, as the party seeking the suppression of evidence, bears the burden of showing that his Fourth Amendment rights were violated, but he has not met it. When faced with two competing narratives – one offered by Hull, and one offered by the United States – neither of which are clearly supported by the evidence offered at the suppression hearing, the Court may not merely choose to accept Hull's narrative as true. And in the absence of evidence supporting Hull's narrative as the one that is correct, the Court must consider that it may be the United States' narrative that is true. Hull has not shown by a preponderance of the evidence that officers did not properly detain him pursuant to their search of the cabin, then develop probable cause with the drugs and the notes in Hull's bag, and only then arrest him. Thus, on the limited facts available, the Magistrate Judge's recommendation was correct, and Hull's motion must be denied.

Additionally, Hull argues that his mere presence in the cabin where drugs were found – since the drugs were not found on his person or in his possession – could not serve as a basis for probable cause because "a person's mere propinquity to others independently suspected of criminal activity does not, **without more**, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (emphasis added) (citing *Sibron v. New York*, 392 U.S. 40, 62-63 (1968)). But here the officers **did** have more: probable cause to arrest Hull was based not only on Hull's presence in the cabin where the drugs were found, but also on the notes found in Hull's bag that, according to Zahn, officers initially thought were drug related. Hull states that the notes were later determined to be insignificant to this case, but he does not elaborate. Regardless of the notes' significance in hindsight, at the time they were discovered the notes could have

formed part of a basis for probable cause if a reasonable officer, viewing the notes as he did in context, could have thought the notes to be related to illegal activity, and tied those notes to Hull. The Court finds that a reasonable officer could have made exactly that type of determination here. Therefore Hull's arrest was supported by probable cause.

Additionally, although the Court need not reach the issue, the Court notes that even if the notes were not a part of this case, Hull's presence in the cabin where the drugs were found would likely be sufficient to create probable cause. Where officers make observations giving rise to probable cause that drug dealing is occurring in a small space, and only a small number of people are located in that space, then officers generally have probable cause to suspect that all of the individuals present are engaged in illegal drug activities because drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Pringle*, 540 U.S. at 373. For example, in *Pringle*, officers found five baggies of cocaine in the backseat of a vehicle, wedged in between the raised armrest and the backseat, and then arrested all three individuals in the car, including Pringle, who was sitting in the car's front seat. *Id.* at 368-69. The Supreme Court held that "it was reasonable for the officer to infer a common enterprise among the three men" because (1) Pringle and his companions were in a relatively small automobile; (2) car passengers "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing," and (3) drug dealers are unlikely to admit innocent people into their enterprise for fear of furnishing incriminating evidence to someone uninvolved. *Id.* at 373 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304-05

(1999)).  Those findings are just as true for five individuals in a small cabin with over 460 pills.  To be sure, Hull's presence in the cabin where the drugs were found does not mean he is guilty of a crime, but it does mean that there was probable cause to suspect that he might be guilty of a crime.

Hull insists this case is more like *Ybarra v. Illinois* than it is *Pringle*.  In *Ybarra*, officers suspected that a bartender was storing heroin behind the bar at a tavern, so the officers obtained a search warrant to search the tavern and the bartender for heroin and evidence of heroin sales.  444 U.S. at 87-88.  When the officers executed the search warrant, they performed a patdown of the nine to thirteen customers who were in the tavern – but when officers approached Ybarra, who was one of the customers, they went beyond the standard patdown and searched his cigarette pack, locating heroin.  *Id.* at 88-89.  Ybarra was later found guilty of possession after losing a suppression motion.  *Id.* at 89.  On appeal, the Supreme Court reversed on the suppression issue, holding that neither the warrant nor anything else gave the officers probable cause to suspect Ybarra had committed a crime.  *Id.* at 92-96.  But as the Court noted in *Pringle*, *Ybarra*'s holding depended heavily on (1) the fact that Ybarra was in a place of public accommodation – a tavern – and not a small, private space; (2) Ybarra was present with a greater number of individuals than Pringle; and (3) officers had no reason to suspect that the bartender would admit all of the bar's customers into his suspected drug dealing enterprise.  *Ybarra*, 540 U.S. at 372-73.  The opposite is true in this case:  Hull was in a small private cabin with only four other people, and officers could assume that the drug dealer or

dealers would only permit individuals involved in the enterprise to be present in the cabin.[4]

The Court therefore finds that Hull's arrest was supported by probable cause.

# ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** Hull's objections to the Report and Recommendation [Docket No. 1100], **ADOPTS** the Report and Recommendation of the Magistrate Judge dated December 3, 2015 [Docket No. 1052]. **IT IS HEREBY ORDERED** that Hull's Motion to Suppress Evidence of Search and Seizure [Docket No. 634] is **GRANTED in part** and **DENIED in part**, as set forth in the Court's opinion.

DATED: June 27, 2016　　　　　　　　　　　　　　　／s／ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[4] The Eighth Circuit also recently rejected an attempt to square a case with *Ybarra*. In *Bernini v. City of St. Paul*, officers arrested a group of approximately 400 individuals suspected of being part of a large and potentially riotous group protesting the 2008 Republican National Convention. 665 F.3d 997, 1002 (8th Cir. 2012). Thirty-two of those arrested filed a § 1983 action against the officers, and the Eighth Circuit held that as long as the officers had probable cause to suspect that the "unit" of individuals were participating in an arrestable offense, the Fourth Amendment did not require officers to have particularized suspicion as to each individual. *Id.* at 1003-04.